[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a suit brought on a Michigan judgment.
The complaint lies in two counts. The First Count is against S.A. Hotels, Inc. dba Knights Inn. The Second Count against Sayed Alam.
The defendant filed an answer and three special defenses. The defendant alleges that the Michigan court:
1. had no personal jurisdiction over the defendant
2. had no jurisdiction over the subject matter.
3. was an inconvenient forum.
The plaintiff filed certified copies of each judgment for $13,895.41 in damages and costs of $170.00 (exhibits 1 and 2).
The defendant agreed to send these installments of $334.00 to the plaintiff (Exhibit 3 and 4). After the defendant had paid three installments, or $904.00 on the debt, the defendant ceased. Sayad Alam claimed the named Sayad Alam should be Sayed Alam.
The certificate of the Michigan court reads "Sayad Alam". The writ in CT Page 1454 the court reads "Sayed Alam".
"The term `idem sonans' means sounding the same. On account of the arbitrary orthography and pronunciation given to proper names, and of the variant spelling of names resulting from ignorance, the courts have formulated the doctrine of idem sonans. The use of a name is merely to designate the person intended; and that object is fully accomplished where the name given to him has the same sound as his true name. Consequently, great latitude is allowed in the spelling and pronunciation of proper names, and in all legal proceedings, whether civil or criminal, a mistake in spelling the name of a party is immaterial if both modes of spelling have the same sound." 38 Am.Jur. § 36.
"Idem sonans n. [Latin] A legal doctrine preventing a variant spelling of a name in a document from voiding the document if the misspelling is pronounced the same way as the true spelling."
Ballentines Law Dictionary 6th Edition p. 748.
In the case of Parmalee vs. Coe, 106 Conn. 102, the issue was the election of members of the town school committee. The ballot box was opened and the votes recounted.
"Upon 41 ballots the name of the petitioner, as written in for the office of town school committee, was misspelled in varying ways and degrees of departure from the correct method. However, there was not in the town of Durham any other adult bearing the name Dan E. Parmelee or one at all closely resembling it or with which it might be confused, and the trial judge ruled that 37 of these ballots should be counted for the petitioner. Upon all of the ballots so counted the error in spelling was so slight and of such a nature as to render the name as written within the scope of the doctrine of idem sonans. Inspection of the original ballots, which were made part of the finding, suggests no doubt that they were intended to be case for the petitioner and reveals no ground for suspicion that the variations in spelling were calculated to or by any reasonable possibility could serve as a distinguishing mark, but indicates that they were the result of mere inadvertence or illiteracy. These ballots were properly counted". pp. 106, 107. The doctrine of idem sonans is applicable in the instant matter.
The Lease Agreement (Ex 5) contains the following paragraph:
"(4) CONSENT TO MICHIGAN LAW. JURISDICTION, VENUE, AND NON-JURY TRIAL: Lessee and any guarantor consent, agree, and stipulate that: a) this lease shall be deemed fully executed and performed in the State of Michigan and shall be governed by and construed in accordance with the CT Page 1455 laws thereof with any interpretations or gaps being consistent with and/or filed by the provisions of Article 2A of the Uniform Commercial Code-Lease: and b) in any action, proceeding, or appeal on any matter related to or arising out of this Lease, the Lessor, Lessee and any Guarantor 1) SHALL BE SUBJECT TO THE PERSONAL JURISDICTION OF THE STATE OF MICHIGAN, including any state or federal court sitting therein, and all court rules thereof: 2) SHALL ACCEPT VENUE IN ANY FEDERAL OR STATE COURT IN MICHIGAN, AND 3) EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY so that trial shall be by and only to the court."
The Special Defense complains:
a. no personal jurisdiction;
b. no jurisdiction over the subject matter; and
c. non forum convenience.
The certified copies cited the non-appearance of the defendant in each case. Accordingly, the court finds for the plaintiff in each the special defenses. Connecticut Civil Procedure. pp. 502, 503.
The only concern is the exclusivity of the Uniform Enforcement of Foreign Judgments Acts, which is codified in the General Statutes §§52-604 through §§ 52-609.
"Section 52-604 defines `foreign judgment' as `any judgment, decree or order of a court of the United States or of any other court which is entitled to full faith and credit in this state, except one obtained by default in appearance or by confession of judgment.' Section 52-605
authorizes the summary enforcement of a properly registered foreign judgment. That section provides that when a judgment creditor files a certified copy of a foreign judgment in the court in which its enforcement is sought, and certifies that this judgment was not obtained by default in appearance or by confession of judgment then `[s]uch foreign judgment shall be treated in the same manner as a judgment of a court of this state . . .' General Statutes § 52-605(b). The parties conceded, and the trial court found, that this statute could not be relied upon here, since the New York judgment was obtained by confession. The defendant's claim, both at trial and in this appeal, is that § 52-605 permanently barred the enforcement of this judgment in Connecticut and that the court erred, therefore, by rendering judgment for the plaintiff. This claim ignores the existence of General Statutes § 52-607, however, which is dispositive of the issue.
The trial court correctly held that § 52-607 preserved the CT Page 1456 common-law right of a judgment creditor to bring an independent action on the judgment. This was a new action that was brought for judgment upon the foreign judgment. This proceeding was not a proceeding under §52-605 to enforce the foreign judgment itself. Under § 52-605 a foreign judgment other that one by default of appearance or confession that was duly registered with a Connecticut court could be executed upon locally. These two statutes therefore allow different remedies for a judgment creditor.
The § 52-605 proceeding, by which a foreign judgment that is not obtained by default of appearance or confession is treated the same as a judgment obtained in Connecticut, is a codification of the common-law rule of res judicata. Under the common law, a final judgment that is rendered by a court of competent jurisdiction is conclusive of the rights of the parties in the same or any other judicial tribunal. The effect of § 52-605, therefore, is to establish a foreign judgment that is not obtained by a default in appearance or by confession as a domestic judgment that is conclusive of the defendant's indebtedness. Furthermore, the foreign judgment is not subject to collateral attack locally; but must be given full faith and credit. U.S. Const., art. IV § 1.
Under § 52-607 a foreign judgment creditor who could or did not rely upon § 52-605 can still proceed by an independent action on the foreign judgment, since this remedy remains unimpaired under the statutory scheme. This independent action on the foreign judgment allows the debtor to attack collaterally the foreign judgment by establishing facts that would render the foreign judgment void." (Citations omitted)
Seaboard Surety Co. v. Waterbury, 38 Conn. Sup. 468, 467, 472.
The plaintiff's action to recover the debt that was tried in the Michigan court was preserved by General Statutes § 52-607. The defendant's failure to attack the Michigan court in this court entitled the plaintiff to recovery.
The plaintiff may recover from the defendants the amount of $13,063.41 with interest and costs.
Burns, J.T.R.